UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ELECTRONICALLY FILED

KENTUCKY DEPARTMENT OF AGRICULTURE                          PLAINTIFF

VS                                        Civil Action No. 3:14CV-372-H

U.S. DRUG ENFORCEMENT AGENCY, et al.,                        DEFENDANTS

PROPOSED INTERVENORS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

COME NOW Proposed Intervenors James Barton, John Bell, Brian Furnish, Jacob H.

Graves III, Thomas Greathouse, Thomas W. Hutchens, Robert L. James and William David

Spalding ("Proposed Intervenors") and pursuant to Fed. R. Civ. P. 65(a), and Local Rule 7.1(a),

submit this Memorandum of Law in support of their Motion for Preliminary Injunction.

In summary, Plaintiff Kentucky Department of Agriculture ("KDA") brought this action

for injunctive and declaratory relief, and initially sought a temporary restraining order to require

Defendant Drug Enforcement Administration ("DEA")  to release hemp seed that the DEA had

seized in Louisville, that had been purchased by the Kentucky Industrial Hemp Commission and

imported by KDA for use in agricultural research pilot projects authorized by Kentucky law and

a provision of the 2014 federal Farm Bill.  That Farm Bill provision states that "notwithstanding"

the  Controlled Substances Act, 21 U.S.C. §§821 *et seq.*—the law enforced by DEA—a State

department of agriculture may grow or cultivate industrial hemp as permitted by State law.

After a hearing before this Court, DEA ultimately issued a registration and import permit

to KDA, allowing KDA to take possession of the Louisville seed.

In doing so, however, in a letter dated May 22, 2014, DEA made clear its intent (i) not to

issue any more import permits on an expedited basis and (ii) to criminally prosecute and seize,

under the federal Controlled Substances Act, 21 U.S.C. §§801 *et seq*. (the "CSA"),  hemp plants

grown by the private farmers who have entered written contracts with KDA to carry out the pilot projects.

The Proposed Intervenors include one farmer, Mr. Furnish, who was to receive some of the Louisville seed in order to commence a pilot project in conjunction with the University of Kentucky.  The other seven Proposed Intervenor farmers have entered Memoranda of Understanding ("MOU's") with KDA to cultivate hemp in additional agricultural research pilot projects in different parts of Kentucky.  A Canadian company has contracted to supply this seed for shipment to KDA,  but it cannot be exported from Canada unless and until there is a judicial determination that no DEA import permit is needed or DEA grants an import permit.  After importation, the seed is to be distributed by KDA to the seven individual farmers to carry out the pilot projects under the farmers' MOU's with KDA.

KDA has applied for an import permit,  but DEA has failed and refused to grant such a permit, demanding a variety of information and assurances that are not required by the Farm Bill provision or Kentucky state law.  DEA also reiterated to KDA, as recently as Monday June 9, its position that any recipients of hemp seed must themselves be State departments of agriculture or State institutions of higher education.

Although KDA has taken the position that it has the authority to distribute hemp seed to the farmers who are carrying out the public functions of the agency itself, DEA's  threat of prosecution and seizure under the CSA makes it impossible for these projects to proceed. Although the  Canadian seed can be planted later than the Louisville seed, with every day that passes after June 10, a decreasing portion of the seed is likely to produce successful plants that will yield useful information.

If their Motion to Intervene is granted,  Proposed Intervenors are entitled to a preliminary injunction enjoining DEA from requiring KDA to obtain any import permit in order to import and take possession of the Canadian seed; and enjoining DEA from prosecuting, or seizing and destroying plants being cultivated by the individual farmers.  *First*, Proposed Intervenors have a strong likelihood of success on the merits.   The plain language of the operative provision of the 2014 Farm Bill makes clear that the CSA does not apply to the agricultural research pilot projects authorized by that provision.  Such pilot projects are by definition impossible to carry out if viable hemp seed (which cannot otherwise be legally cultivated in the U.S.) cannot be imported.  The new law manifestly authorizes KDA to import viable hemp seed without any license or import permit from DEA.  Further, the plain language of the law clearly shows Congress' assumption and intent that private farmers be utilized by state agriculture departments to carry out the pilot projects.  To read the law as requiring the officials and employees of a small state agency like KDA, who are not themselves active farmers, to leave their offices in Frankfort and cultivate the hemp seed would be absurd and would completely frustrate the intent of Congress.

*Second*, the Proposed Intervenors would suffer irreparable injury without an injunction, as they would be unable to carry out the pilot projects pursuant to their contracts with KDA, as a practical matter, forever.  *Third*, there would be no harm to others.  Hemp is useless as drug marijuana and, in any event, its cultivation under the MOU's would be tightly controlled and regulated by KDA, as required by Kentucky law and the Farm Bill provision.  There is no law enforcement interest in requiring KDA to obtain an import permit or in effectively forbidding it to contract with private farmers to carry out the pilot projects.  *Fourth*, the public interest would be served by granting an injunction because the injunction would allow KDA and the Proposed

Intervenor farmers to carry out the Congressional purpose of facilitating research on the commercial viability of industrial hemp cultivation, in order to create new jobs and economic growth in Kentucky.

## LEGAL AND REGULATORY BACKGROUND

### A.  Industrial Hemp

Industrial hemp is a commonly used term for non-psychoactive varieties of the species Cannabis sativa L. that are cultivated for industrial rather than drug purposes. Congressional Research Service, *Hemp as an Agricultural Commodity* (July 24, 2013)("CRS Rpt.")   Industrial hemp plants grown in Canada and Europe are bred to contain less than three-tenths of one percent (0.3%) by weight of THC (the psychoactive element) in the upper portion of the flowering plant, respectively, while marijuana varieties average about 10% THC, and range up to much higher levels.  *Id*. at 2.  Since a level of 1% THC "is considered the threshold for cannabis to have a psychotropic effect or an intoxicating potential," *id*. at 2, flowers from industrial hemp have no potential for drug use. Industrial hemp "can be grown as a fiber, seed or dual purpose crop." *Id*. at 4.

Hemp stalk is used by U.S. companies as a textile fiber, biocomposite reinforcement for auto parts and other goods, and for insulation and paper, among other products. Hemp seeds are also used in the U.S. directly as a food ingredient and also crushed for oil and meal.  *Id*. at 4. The seed contains 20% high-quality digestible protein and is also an excellent source of essential fatty acids.  U.S. Dep't of Agriculture, *Industrial Hemp in the United States: Status and Market Potentia*l 15 (Jan. 2000).  Hemp oil is also currently used in a variety of cosmetic and body care products manufactured and/or distributed in the U.S., *id*., including bar and liquid soaps, shampoos and hair conditioners, body lotions, creams, massage oils, lip balms and salves.   It has

been estimated that "the global market for hemp consists of more than 25,000 products in nine submarkets: agriculture; textiles; recycling; automotive; furniture; food/nutrition/beverages; paper; constructions materials; and personal care." CRS Rpt. at 4. The total U.S. market for hemp products was estimated to be approximately $500 million in 2012. *Id.* at 5 (citing Hemp Industry Association estimates).

Companies currently selling hemp seed and oil food, nutritional and personal care products in the U.S. generally either import hemp seed and oil from China, Canada or Europe, for use in manufacturing these products in the U.S., or import already finished products from Canada or Europe. CRS Rpt. at 6-7. "Approximately 30 countries in Europe, Asia and North and South America currently permit farmers to grow hemp." *Id.* at 9.

### B. Legal Status Under Federal Law

The hemp plant—although useless as drug marijuana—is the same species as the marijuana plant, Cannabis Sativa L. The express language of the federal Controlled Substances Act ("CSA"), however, provides that hemp stalk, fiber, oil and sterilized seed are *not* controlled as marijuana. The statutory definition of "Marihuana" specifically *excludes* "the mature stalks of such [cannabis] plant, any other compound, manufacture, salt, derivative, mixture or preparation of such mature stalks (except the resin extracted therefrom), fiber, *oil* or cake, or *the sterilized seed of such plant*…." 21 U.S.C. §802(16)(emphasis added). The express exclusion of hemp stalk, fiber, oil and sterilized seed was adopted by Congress more than 60 years ago in order to make clear that its intention was only to regulate drug-cannabis and that it did not intend to interfere with the legitimate hemp industry.

In 2004, the U.S. Court of Appeals for the Ninth Circuit invalidated U.S. Drug Enforcement Administration regulations which would have banned the manufacture and sale of

edible products made from hemp seed and oil. *Hemp Industries Ass'n v. Drug Enforcement Administration*, 357 F.2d 1012 (9th Cir. 2004). The Court affirmed that non-psychoactive hemp products do *not* contain any controlled substance as defined by the CSA and that "[t]he non-psychoactive hemp in Appellants' [edible and personal care] products . . . fits within the plainly stated exception to the CSA definition of marijuana. . . . Congress knew what it was doing and its intent to exclude non-psychoactive hemp from regulation is entirely clear." *Id*. at 1018.

For this reason, U.S. companies are free to import hemp stalk, fiber, seed and oil, to trade in it, and to use it in the manufacture of products. But because the industrial hemp plant is the same species as marijuana, it has been illegal for U.S. farmers to grow the plant *itself*—which generally remains a controlled substance under the CSA.

### C.  Situation of U.S. Farmers

While cultivation of the industrial hemp plant is illegal under U.S. federal law, as noted it is legal in more than 30 countries. CRS Rpt. at 9. Hemp farming has been legal in Canada for approximately sixteen years. Global production has increased overall from about 250 million pounds in 1999 to in excess of 380 million pounds in 2011. *Id*. So U.S. companies must import hemp, stalk, fiber, seed and oil from China, Canada and, to some extent, from Europe and elsewhere in Asia, instead of purchasing it from U.S. farmers.

This has created a lost opportunity for U.S. agriculture. Hemp is a sustainable, fast growing, high-yielding and mechanically strong plant.  As noted, the U.S. market for industrial hemp stalk and fiber, while less developed than that in Europe and China, is still very substantial and would provide U.S. industrial hemp farmers significant opportunities—opportunities now lost to them.

**D.  Kentucky Law**

As explained in KDA's Verified Petition filed in this case (ECF No. 1)("KDA Pet."),

Kentucky Senate Bill 50 enacted in 2013 (attached as Exhibit to KDA's Petition), makes clear

that industrial hemp is not subject to Kentucky's Controlled Substances Act; establishes

conditions and procedures for licensing of industrial hemp farmers by KDA; and establishes

Kentucky Industrial Hemp Commission to carry out specified research programs. (KDA Pet.  ¶¶

3-4). *See* KRS §§260.850 *et. seq*. (2014).

**E.  Federal Farm Bill Provision**

In the federal Agricultural Act of 2014, P.L. No. 113-79 (commonly known as the "2014

Farm Bill"), Congress specifically, and for the first time since enactment of the CSA, exempted

from the CSA cultivation of industrial hemp under agricultural pilot programs authorized by

state law.  Section 7606 provides, in pertinent part, that:

> (a) In General--Notwithstanding the Controlled Substances Act (21 U.S.C. 80 et seq.), the Safe and Drug-Free Schools and Communities Act 920 U.S.C. 7101 et seq.) chapter 81 of title 41, United States Code, or any other Federal law, an institution of higher education…of a State department of agriculture may grow or cultivate industrial hemp if
> (1) The  industrial hemp is grown or cultivated for purposes of research conducted under an agricultural pilot program or other agricultural or academic research; and
> (2) The growing or cultivating of industrial hemp is allowed under the laws of the State in which such institution of higher education or State department of agriculture is located and such research occurs.

Section 7606 defines "agricultural pilot program" to mean a program to study the growth,

cultivation or marketing of industrial hemp—

> (A) in States that permit the growth or cultivation of industrial hemp under the laws of the State; and
> (B) in a manner that—
> (i)      ensures that only institutions of higher education and State department of agriculture are used to grow or cultivate industrial hemp;

(ii)     requires that sites used for growing or cultivating industrial hemp in a State be certified by, and registered with, the State department of agriculture; and

(iii)    authorizes State departments of agriculture to promulgate regulations to carry out the pilot programs in the States in accordance with the purposes of this section.

## FACTUAL BACKGROUND

Much of the relevant factual background is set forth in KDA's Verified Petition and will not be repeated in detail here. KDA brought this action for injunctive and declaratory relief, and sought a temporary restraining order to require the DEA to release hemp seed that Defendants had seized in Louisville, that had been purchased by the Kentucky Industrial Hemp Commission and imported by KDA for use in several agricultural research pilot projects authorized by Kentucky law and a provision of the 2014 federal Farm Bill. After a hearing before this Court, DEA ultimately issued a registration and import permit to KDA, allowing KDA to take possession of the Louisville seed.

Acting under Farm Bill section 7606 and Kentucky state law, KDA entered a Memorandum of Understanding ("MOU") with Proposed Intervenor Furnish to conduct a research pilot poject in conjunction with the University of Kentucky.  KDA intends to distribute the Louisville seed released by DEA to Mr. Furnish and others.

Six of the other Proposed Intervenor farmers have each entered an MOU with KDA to undertake an agricultural research pilot program; these programs will occur in different parts of the Commonwealth and will contribute different types of information about the agricultural and commercial viability of cultivating various types of industrial hemp s well as information about factors that may contribute to that viability. See Declaration of  James Barton, attached hereto as Exhibit 1 ("Barton Dec."); Declaration of John Bell, attached hereto as Exhibit 2 ("Bell Dec."); Declaration of Jacob H, Graves III, attached hereto as Exhibit 3 ("Graves Dec."); Declaration of

Thomas Greathouse, attached hereto as Exhibit 4 ("Greathouse Dec."); Declaration of Thomas

Hutchens, attached hereto as Exhibit 5 ("Hutchens Dec."); Declaration of Robert L. James,

attached hereto as Exhibit 6 ("James Dec.").

To enable these six KDA-authorized projects to be carried out, the Kentucky Industrial

Hemp Commission and Hemp Oil Kentucky, a company owned and headed by Proposed

Intervenor William David Spalding, have contracted to purchase, from a Canadian company,

Hemp Oil Canada, approximately 1,000 pounds of viable hemp seed, consisting of a shorter day

variety of hemp seed that was developed to grow in Northern Canada (the "Canadian Seed").

Declaration of William David Spalding, attached hereto as Exhibit 7 ("Spalding Dec.") ¶8.

Upon importation of this seed to the U.S., KDA is to take possession of the seed, as

importer of record  (*Id*. ¶9). Under the regulations of Health Canada, however, a Canadian

federal government agency, Canada would not grant the needed permit to export this seed to the

U.S. without an import permit from DEA or a judicial or other government determination that no

permit is needed.  (*See* Spalding Dec. ¶10 & e-mail exchanges attached as Exhibits A and B to

Spalding Dec.).  Accordingly, the Canadian Seed has not left Canada.  (*Id*. ¶ 10).

Because the Canadian Seed is a shorter day variety of industrial hemp, the six farmers

still have a short amount of time  to get it in the ground and produce a full crop. Each day of

delay in planting much beyond June 10, however, will reduce the potential of producing a crop

that would yield any useful data. (*Id*. ¶¶ 11-12).

Thus, unless this seed is imported, taken by KDA and distributed by KDA to the

Proposed Intervenor farmers Barton, Bell, Graves, Greathouse, James and Spalding so that they

can plant the seed  within a matter of days. it would as a practical matter be necessary for the six

farmers to wait another year before planting the seed and initiating the pilot projects.  (*Id*. ¶13).

In issuing its import permit to KDA for the Louisville seed, DEA's Deputy Assistant Administrator sent a cover letter, dated May 22, 2014,  to KDA's counsel (attached hereto as Exhibit 8) stating, first, that:

> it is the position of DEA that Section 7606 [the 2014 Farm Bill provision] does not provide any authorization to private growers who are not institutions of higher education or a State department of agriculture within the meaning of Section 7606.  That is, private growers who are not institutions of higher education or a State department of agriculture within the meaning of Section 7606 remain subject to the registration requirement and all other applicable provisions of the Controlled Substances Act.  The *seeds therefore may not be distributed by KDA, the institutions of higher education to whom KDA will distribute the seeds, or any other persons, to private growers w*ho are not institutions of higher education or a State department of agriculture within the meaning of Section 7606. DEA would consider *any such distributions to unauthorized persons to be outside the scope of Section 7606 and thus unlawful under the Controlled Substances Act.*

(emphasis added).  Second, DEA's letter stated that:

> Although DEA made special accommodations in this case due to the apparent confusion regarding the meaning of Section 7606, all applications for proposed future importations of viable cannabis seeds must be carried out in the normal manner…. In accordance with federal law, *any attempted importation in to the United States of future shipments of viable cannabis seeds without the requisite DEA import permit*, or by a person who does not hold a valid DEA registration authorizing such person to import the seeds, *may result in seizure and destruction of the seeds by the U.S. Government.*

(emphasis added).  Thus, DEA has (i) made clear they will not allow KDA to bring in the Canadian seed without a new import permit, which will not be expedited but will be handled in the 'normal manner," *i.e.*, taking weeks, months or more to process; and (ii) made clear that DEA will criminally prosecute and/or seize crops from the private farmers who receive seed from KDA for the pilot projects.  As to the second point, DEA had previously stated in a letter to KDA, sent May 13, 2014, that "it is the position of DEA that Section 7606 does not provide any authorization to private growers of industrial hemp.  That is, private growers remain subject to the registration requirement and all other applicable provisions of the controlled Substances Act….."  (KDA Verified Petition, ECF No. 1, Exhibit 4).

10

On or about Friday, May 30, 2014, KDA applied to DEA for an import permit to allow KDA to import the Canadian Seed, and again requested expedited treatment.  At DEA's request, on June 2, 2014, KDA provided information about the Proposed Intervenor farmers, the growers to whom KDA intends to distribute the Canadian Seed.  (See DEA E-Mail attached hereto as Exhibit 9).  DEA has not issued the requested import permit; rather, on or about June 9, DEA sent KDA an e-mail demanding additional information and demanding an explanation of "whether KDA considers these persons [the Proposed Intervenor farmers] to be an institution of higher education or State department of agriculture within the meaning of Section 7606 and, if so, the basis for that determination." (*Id.*).

## DISCUSSION

### I.      LEGAL STANDARD

"When considering a motion for preliminary injunction, the district court must consider and balance four factors: '(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.'" *Williamson v. Recovery Ltd. Partnership*, 731 F.3d 608, 627 (6th Cir. 2013)(quoting *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004)). *Accord, Overstreet v. Lexington-Fayette Urban Cty Gov.*, 305 F.3d 566, 573 (6th Cir. 2002).

### II.     PROPOSED INTERVENORS HAVE A STRONG LIKELIHOOD OF PREVAILING ON THE MERITS

There is a strong likelihood that the Proposed Intervenor farmers and companies will prevail on the merits because DEA's positions, as expressed in its May 22 letter, are manifestly contrary to the language and intent of the Farm Bill provision, Section 7606.  First, it is clear that

the CSA simply *does not apply* to the growth or cultivation of industrial hemp by or "us[ing]" a

state agriculture department or institution of higher learning, or to any actions inherently

necessary to carry out the agricultural pilot programs contemplated by Section 7606.  Section

7606 states that, "*Notwithstanding the controlled Substances Act...or any other Federal law***,** . . .

a State department of agriculture "may grow or cultivate industrial hemp . . . for purposes of

research conducted under an agricultural pilot program or other agricultural or academic

research"  (emphasis added).

### A.  "Notwithstanding" Means the CSA Does Not Apply at All

"[I]t is axiomatic that the clearest evidence of congressional intent is the plain language

of statute itself.  Where the text is plain and unambiguous, we must apply a statute according to

its terms."  *Williamson*, 731 F.3d at 618.  When a federal law uses the phrase, "notwithstanding"

another law, the plain meaning of that phrase is that the other law simply *does not apply* to the

situation described.   In *Deutsche Bank Nat'l Trust Co. v. Tucker*, 621 F.3d 460 (6th Cir. 2010),

the court considered a provision of the Bankruptcy Code (section 1322(e)) stating that

"notwithstanding" another provision of the Code (section 506(b)), the amount needed to cure a

default is to be determined in a certain way, inconsistent with section 506(b).  The Court held

that "the language Congress used is unambiguous:  Congress expressly resolved any potential

conflict between [the two sections] in favor of section 1322(e)...."  621 F.3d at 463.  The Court

ruled that:

> It is hard to imagine a clearer statement of congressional intent than
> 'notwithstanding....'  The term 'notwithstanding is defined as 'without prevention
> or obstruction from or by' or 'in spite of'. . . . By using the term 'notwithstanding'
> in section 1322(e), Congress expressly precluded section 506(b) from applying. . .
> .  In each instance [in which it is used in the Bankruptcy Code], the term
> 'notwithstanding' functions in its normal supplanting way: *it simply excludes*
> *application of the referenced section.*

*Id*. at 463-64 (emphasis added)(internal citations omitted).  *See*, to the same effect, *Shoshone Indian Tribe of the Wind River Reservation v. United States*, 364 F.3d 1339, 1346 (Fed. Cir. 2004)("The introductory phrase '[n]otwithstanding any other provision of law' connotes a legislative intent to displace any other provision of law that is contrary to the Act, .. . ."). Here too, in Section 7606 of the Farm Bill, the term "notwithstanding" simply "excludes application of the Controlled Substances Act or other any other federal law" to the cultivation of industrial hemp by a State department of agriculture.

**B.  Section 7606 Allows State Departments of Agriculture to Import Viable Hemp Seed Without Obtaining a DEA Import Permit**

Under Section 7606, it is clear that a State department of agriculture cannot be required to obtain an import permit from DEA, under the CSA, in order to import viable hemp seed.  Again, Section 7606 says the CSA and any other federal law—including the import licensing requirement—do not apply to cultivation of industrial hemp by a State department of agriculture. If DEA's interpretation were correct, it would be impossible for a State department of agriculture to cultivate industrial hemp because the department could not obtain the seed to do so.  That is because, as KDA explained in its Verified Petition, there is "no alternative source of hemp seeds" other than imported seeds, KDA Pet. ¶20, because except as permitted by Section 7606, it is not lawful to cultivate or possess viable hemp seed within the United States.

Thus, under DEA's interpretation, it would be literally impossible for KDA or any other State department of agriculture to grow or cultivate hemp for agricultural pilot projects as contemplated by the law, unless that State department of agriculture complies with a requirement imposed by a law (the CSA)  that Section 7606 says *does not apply* to that growth or cultivation. That interpretation flies in the face of Congress' intent in enacting Section 7606.

"The primary rule of statutory construction is to ascertain and give effect to the legislative intent." *Hedgepeth v. Tennessee*, 215 F.3d 608, 616 (6th Cir. 2000). "To determine legislative intent, a court must first look to the language of the statute itself." *Broadcast Music, Inc. v. Roger Miller Music, Inc.*, 396 F.2d 762, 769 (6th Cir. 2005). In determining if the intent is clear, "'courts consider the language [of the statute] itself, the specific context in what that language is used and the broader context of the statute as a whole.'" *Flores v. U.S. Citizenship & Immigration Servs.*, 718 F.3d 548, 511 (6th Cir. 2013)(quoting *Nat'l Cotton Council of Am. v. U.S. EPA*, 553 F.3d 927, 933 (6th Cir. 2009)).

By using language that "notwithstanding" a particular law, certain entities can undertake a defined activity,  Congress clearly intends, in the words of the Sixth Circuit, that  those entities can undertake that activity "'without prevention or obstruction from or by'" that law. *Deutsche Bank Nat'l Trust Co.*, 621 F.3d at  464.  Here, by using the language "notwithstanding . . . the Controlled Substances Act. . . or any other Federal law," State departments of agriculture "may grow or cultivate industrial hemp" for agricultural pilot projects, Congress manifestly intended that State departments of agriculture would be able to grow and cultivate industrial hemp for these projects "without prevention or obstruction from" the CSA or any other federal law.  That plain language precludes DEA from requiring (on penalty of criminal prosecution and/or seizure) that State departments of agriculture obtain a DEA import permit under the CSA in order to obtain the seed necessary to engage in such growth or cultivation.

Congress' specific intent is further made clear by recent statements of Senate Republican Leader Mitch McConnell (R-KY),  who has publicly stated that he is the author of Section 7606 and that:

> The intent of this provision is to allow states' departments of agriculture and universities to explore the commercial use of industrial hemp as  means for job

14

creation and economic development.  *The language expressly exempts hemp from federal regulation for these defined purposes.*

J. Patton, "Kentucky Agriculture Department, DEA reach deal on hemp seeds; planting could some soon," *Herald Leader* (May 21, 2014) accessed at

www.kentucky.com/2014/05/21/3252508/kentucky-agriculture-department.html

(emphasis added).  While not part of the formal legislative history, these comments confirm Congress' intent in enacting Section 7606 even if that language itself were ambiguous, which it is not. Under that Section, KDA is not required to obtain an import permit under the CSA in order to import the Canadian seed to be distributed to the Proposed Intervenor farmers to carry out their agricultural pilot projects.

### C.  Section 7606 Allows State Departments of Agriculture and Institutions of Higher Education to Contract With Private Farmers to Carry Out Agricultural Pilot Programs

As noted, DEA has taken the position that neither KDA nor the Kentucky colleges and universities may distribute hemp seed to private farmers to cultivate and grow for the purposes of carrying out agricultural pilot programs--that private farmers cannot grow or cultivate industrial hemp even under the auspices of a State department of agriculture. *See* Exhibits 8 and  9 hereto; and DEA Letter of May 13, 2014 (KDA Verified Petition, ECF No. 1, Ex. 4).  Again, DEA's interpretation is utterly inconsistent with the plain language of Section 7606 and the clear intent of Congress in enacting that provision.

First,  with respect to State departments of agriculture, KDA obviously does not have the capability to use any of its own small office staff to plant hemp seeds and cultivate test plots. Thus, forbidding KDA from contracting with private farmers to carry out the agricultural pilot programs would effectively preclude KDA from cultivating or growing industrial hemp for the pilot programs.  As to the colleges and universities, while they may have limited capability to use

their own employees to actually cultivate test plots, it is, as the Court noted during the May 21 hearing in this case, normal and expected that colleges and universities  contract with private individuals and firms to carry out research projects.

Indeed, KDA has suggested, during the hearings on its own motion for preliminary relief, that it regards the private farmers as "extensions" of KDA itself.  KDA obviously believes that it has state statutory authority to contract with private individuals and firms to carry out its statutory functions, and those contractors, under the direct ongoing supervision of the agency, are in other analogous contexts recognized as standing in the shoes of the state agency.  For example, under Kentucky law, if a private entity carries out a contract with the state and strictly complied with its contractual obligations, the contractor enjoys the immunity conferred on the state itself—the contractor is not liable to injured third parties in prosecuting work carried out under the state contract.  *See, e.g., Fisher v. Elmo Greer & Sons, LLC*, 2009 WL 3161400  *7 (E.D. Ky. 2009).

Here KDA can *only* carry out the contemplated purposes of the statute by using private farmers.  Congress' use of the 'notwithstanding" phrase in Section 7606 plainly means that both State departments of agriculture and state colleges and universities are legally able to grow and cultivate hemp "without prevention or obstruction from or by" the CSA.  For that reason,  DEA's position that the CSA prevents private farmers from carrying out pilot projects for and under contract with and the supervision of State departments  of agriculture and colleges and universities, is simply untenable.

Second, precisely because KDA does not have the capability to use its own office staff to cultivate the test hemp plots for the agricultural pilot projects, DEA's position that KDA cannot contract with private farmers to receive and cultivate the hemp seed means that KDA could not

16

itself undertake pilot projects *at all*.  That would be an absurd reading of a statute that plainly

states that "a State department of agriculture may grow or cultivate industrial hemp….." To the

extent that DEA is relying on the fact that Section 7606 does not expressly authorize State

departments of agriculture to contract with private farmers, that reliance is utterly misplaced.

Where such a "literal interpretation of the statute would create an unintended and illogical result,.

. .  equity requires that this Court interpret the language to produce results that conform with

Congress' intent and overriding purposes of" the statute.  *In re Long*, 519 F.3d 288, 297 (6th Cir.

2008).

Third,  DEA's interpretation ignores the language of Section 7606(b)(1)(B)(ii), that

defines "agricultural pilot program" as a program "to study the growth, cultivation or marketing

of industrial hemp…in a manner that—… requires that sites used for growing or cultivating

industrial hemp be certified by, and registered with, the State department of agriculture."   If a

State department of agriculture could cultivate industrial hemp only by using the agency's own

property and employees, as DEA's position would require, then that language would be wholly

superfluous.  Why would it ever be necessary for a site used to cultivate industrial hemp be

"certified" and  "registered" with a State department of agriculture if the site belongs to the

department of agriculture and the department is doing the cultivation itself?  A reading of the

statute that renders an entire section superfluous is impermissible.  "We must construe a statute

as a whole and, in so doing, we must strive to 'interpret provisions so that other provisions in the

statute are not rendered  inconsistent, superfluous or meaningless.'"  *Chrysler Corp. v. Comm'r*

*of Internal Revenue*, 436 F.3d 644, 654-55 (6th Cir. 2006)(quoting *Broadcast Music,*  396 F.3d at

769). *Accord, Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312, 341 (6th Cir.

2012)(reading that renders part of a statute superfluous or meaningless is "impermissible").

For these reasons, DEA's position that State departments of agriculture, and institutions of higher education, cannot contract with private farmers to carry out agricultural pilot programs under Section 7606, defies the plain meaning and clear intent of the language of that provision, and is manifestly incorrect.  Likewise, DEA's position that an import permit is needed by KDA to import seed for these programs is also inconsistent with the language and intent of the statute. Accordingly, Proposed Intervenors have a strong likelihood of prevailing on the merits.

### III.    PLAINTIFF-INTERVENORS WILL SUFFER IRREPARABLE INJURY IF AN INJUNCTION IS NOT GRANTED

Proposed Intervenors will suffer irreparable injury if a preliminary injunction is not granted.  As noted, the Canadian Seed (the viable industrial hemp seed that  Hemp Oil Kentucky and the Industrial Hemp Commission have contracted to purchase from Canada, which would be imported by and delivered to KDA) is an oil producing cultivar developed to produce a crop in Northern Canada.   (Spalding Dec. ¶ 11).  If these seeds can be delivered to KDA, distributed by KDA to Proposed Intervenor farmers Bell, Barton, Graves, Greathouse, James and Spalding, planted by those farmers very quickly, it will still be possible to conduct agricultural pilot programs during this growing season.  For every day that passes after June 10, however, the yield is likely to be decreased and with it, the chances of producing useful data.  (*Id*. ¶¶12-13).

A year's worth of research and data will be forever lost and the farmers will be set back at least a year in their efforts to demonstrate the commercial feasibility of industrial hemp cultivation in Kentucky.  Accordingly, both the KDA and the Proposed Intervenors will thus suffer irreparable injury, for which there is no adequate remedy at law, in the absence of a preliminary injunction.

## IV.   ISSUANCE OF THE INJUNCTION WILL CAUSE NO HARM TO OTHERS

No other individual or entity would be harmed by issuance of the injunction.  The Proposed Intervenor farmers would simply be allowed to proceed with carrying out, on behalf of and under contract with KDA, the agricultural pilot programs contemplated by Section 7606.

No legitimate law enforcement interest would be implicated by the importation of seed by KDA and distribution of the seed to the private farmers.  Industrial hemp, as noted, is useless as drug marijuana.  DEA's letter of May 22, 2014 to KDA (Ex. 10 hereto) makes clear that DEA can distinguish cannabis plants "that are being lawfully grown under federal  law from those plants that are not," if it is provided with certain basis information about the location and size of the test plots, the anticipated date of harvest, etc.  No one has objected to KDA providing that information.  For these reasons, issuance of the injunction will cause no harm to others.

## V.   THE PUBLIC INTEREST WOULD BE SERVED BY ISSUANCE OF THE INJUNCTION

In enacting Section 7606, Congress has made clear its public policy choice that State departments of agriculture and institutions of higher education be able, under State law, to engage in agricultural pilot programs testing the viability of hemp cultivation, free from the concern that such activity will be subject to the CSA.  As the author of the provision, Senator Republican Leader Mitch McConnell (R-Ky) has stated publicly, "[t]he intent of this provision is to allow states' departments of agriculture and universities to explore the commercial use of industrial hemp as  means for job creation and economic development. The language of Section 7606 expressly exempts hemp from federal regulation for these defined purposes."  J. Patton, "Kentucky Agriculture Department, DEA reach deal on hemp seeds; planting could some soon," *Herald Leader* (May 21, 2014) accessed at www.kentucky.com/2014/05/21/3252508/kentucky-agriculture-department.html.

Granting the requested preliminary injunction would further the public policy objective that Congress intended to accomplish in enacting Section 7606, which is clearly in the public interest.  Particularly because industrial hemp is completely useless as a drug, there is no public interest in preventing the agricultural research pilot programs authorized by Section 7606. For these reasons, the public interest would be served by issuance of the requested injunction.

Pursuant to Fed.R.Civ.P. 65(c), Proposed Intervenors are willing to post surety in an appropriate amount set by the Court.

## CONCLUSION

For the reasons set forth above, Proposed Intervenors' Motion for a Preliminary Injunction should be granted and an order should be issued  preliminarily enjoining Defendant DEA:

(i)     From enforcing or attempting to enforce the CSA against KDA for importing the Canadian seed without obtaining an import permit from DEA;

(ii)    From enforcing or attempting to enforce the CSA against Proposed - Intervenor farmers for receiving, possessing, planting and cultivating industrial hemp seed for research projects authorized by, and pursuant to their respective MOU's with KDA;

(iii)   From exercising or attempting to exercise any authority to regulate, prohibit, license or condition the importation, distribution, possession or cultivation of industrial hemp seed or plants undertaken for purposes of research conducted under an agricultural pilot program sponsored by KDA under and within the meaning of section 7606 of the 2014 Farm Bill.

Respectfully submitted,

s/ Richard E. Plymale
Richard E. Plymale
Jonathan S. Miller
FROST BROWN TODD LLC
Lexington Financial Center
250 W. Main Street, Suite 2800
Lexington, KY 40507-1749
(859- 231-0000
rplymale@fbtlaw.com
jmiller@ftblaw.com

and

Joseph E. Sandler
Dara Lindenbaum
SANDLER REIFF LAMB ROSENSTEIN
& BIRKENSTOCK
1025 Vermont Ave., N.W.  Suite 300
Washington, D.C. 20005
(202) 479-1111
sandler@sandlerreiff.com
lindenbaum@sandlerreiff.com

*COUNSEL FOR PROPOSED INTERVENORS*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 12th day of June, 2014, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send electronic notice to all counsel of record.

I further certify that on the same date, a copy of the foregoing was served by U.S. mail, postage pre-paid on the following:

David J. Hale
U.S. Attorney for the Western District of Kentucky
717 West Broadway
Louisville, KY 40202

Eric Holder
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530-0001


s/ Richard E. Plymale
COUNSEL FOR PROPOSED INTERVENORS

0129041.0617430   4821-7121-1291v1