1             UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF KENTUCKY
2                  LOUISVILLE DIVISION

3

KENTUCKY DEPARTMENT OF        )  Case No. 3:14CV-372-H
4  AGRICULTURE,               )
                              )
5           Plaintiff,        )
                              )
6  VS.                        )
                              )
7  U.S. DRUG ENFORCEMENT      )
   AGENCY, et al.,            )
8                             )  June 18, 2014
           Defendants.        )  Louisville, Kentucky
9

10         ********************************************

11         TRANSCRIPT OF TELEPHONIC MOTION HEARING
              BEFORE HONORABLE JOHN G. HEYBURN II
12            UNITED STATES DISTRICT SENIOR JUDGE

13         ********************************************

14


15

APPEARANCES:
16

For Plaintiff:          Daniel Luke Morgan (by telephone)
17                      McBrayer, McGinnis, Leslie &
                        Kirkland, PLLC
18                      201 East Main Street
                        Suite 1000
19                      Lexington, Kentucky 40507

20


21

22              Alan W. Wernecke, RMR, CRR
                   Official Court Reporter
23                 232 U.S. Courthouse
                Louisville, Kentucky 40202
24                    502-625-3779
   Proceedings recorded by mechanical stenography, transcript
25  produced by computer.

```
 1    APPEARANCES (Continued):

 2    For U.S. Drug Enforcement Agency, U.S. Customs & Border
      Protection, and U.S. Department of Justice:
 3                          Benjamin S. Schecter (by telephone)
                            Regina S. Edwards (by telephone)
 4                          U.S. Attorney's Office
                            717 West Broadway
 5                          Louisville, Kentucky 40202

 6                          Arthur Goldberg (by telephone)
                            Michelle Bennett (by telephone)
 7                          Federal Programs Branch
                            Civil Division
 8                          U.S. Department of Justice
                            Washington, DC 20530
 9
      For Potential Intervenors:
10                          Joseph E. Sandler (by telephone)
                            Dara S. Lindenbaum (by telephone)
11                          Sandler, Reiff, Lamb, Rosenstein &
                            Birkenstock, P.C.
12                          1025 Vermont Avenue, N.W.
                            Suite 300
13                          Washington, DC 20005

14                          Richard E. Plymale
                            Jonathan S. Miller
15                          Frost Brown Todd, LLC
                            250 West Main Street
16                          Suite 2800
                            Lexington, Kentucky 40507
17

18

19

20

21

22

23

24

25
```

1      (Begin proceedings in chambers at 12:13 p.m.)

2            THE COURT:  Hello.

3            MR. SCHECTER:  Good afternoon, Judge.  This is Ben

4   Schecter and Regina Edwards.

5            MS. EDWARDS:  Hello.

6            THE COURT:  All right.

7            MR. MORGAN:  This is Luke --

8            THE COURT:  Luke Morgan?

9            MR. MORGAN:  Yes, sir.  Good afternoon.

10            MR. GOLDBERG:  And this is Mr. Goldberg and Ms.

11   Bennett with Main Justice in Washington, Your Honor.

12            THE COURT:  Welcome to Kentucky, even if it's by

13   phone.  We've got Jonathan Miller and Dick Plymale here

14   representing the farmers.  They are in their overalls.

15       What seems to be the problem from your point of view?

16   Dick?

17            MR. PLYMALE:  Well, Judge, I think on behalf of the

18   farmers, you know, what we would like to see is the commitment

19   from the DEA that there's going to be no prosecution or seizure

20   of the crops that we have involved in this pilot program under

21   memorandums of understanding with the Ag Department or with the

22   universities.

23       The reason we raise this is because subsequent to the past

24   resolution with the Ag Department, the DEA sent a letter on the

25   22nd of May that said, you know, in no uncertain terms, quote,

1    "may not be distributed to ... private farmers" -- well, they

2    used the word "growers" -- "who are not institutions of higher

3    education or a State Department of Agriculture."

4              THE COURT:  Right.  I had thought --

5              DEPUTY CLERK:  Your Honor, I'm sorry to interrupt.

6    Mr. Sandler is not on the line that I understand is lead counsel

7    for the farmers out of Washington.  I didn't get notification

8    that he needed to be on the line.

9        We have to call you-all back.  Hold on.  Please hang up, and

10   we will call you right back.

11             MR. PLYMALE:  Sorry about that.

12             DEPUTY CLERK:  We'll be right back with you.

13       (Off the record discussion.)

14             THE COURT:  Hello.  We have everybody we had before

15   and now Joe Sandler, and who else?

16             MS. LINDENBAUM:  Dara Lindenbaum on behalf of proposed

17   intervenors.

18             THE COURT:  We were just -- Dick Plymale was just

19   explaining your position, and I was going to ask the DEA

20   folks, I thought at our last conference that we had sort of --

21   obviously there was no order or anything, but that we had

22   sort of decided that if the KDA made the proper applications

23   and received their permits, which apparently they have, and then

24   entered into memorandum of understandings with, I think it was

25   understood at the time, growers or other people, that whoever

1   they entered into the proper memorandum of understanding --

2   and I think they were going to -- they were going to show that

3   to the DEA as a matter of form -- that once that had occurred,

4   that the folks who then received the seeds from the KDA would

5   be -- and/or the University of Kentucky under the memorandum

6   of understanding would be considered extensions of the

7   university and would be legal growers, for want of a better

8   term.

9       Did I miss something or not, Regina or Ben?

10          MS. EDWARDS:  I think that sums it up, Your Honor,

11  yes.

12          THE COURT:  So then as a general rule, that these

13  growers that Jonathan and Dick represent, if they are growing

14  pursuant to a proper memorandum of understanding, and the KDA or

15  Kentucky wouldn't be able to get the seeds unless they had made

16  an application and it had been approved, so then if they are

17  operating under the memorandum, then they are operating within

18  the law.  Is that the way it works?

19          MR. SCHECTER:  This is Ben.  Generally speaking,

20  that's correct.  In fact, there was the second application to

21  import these Canadian seeds.  The MOUs were submitted as part of

22  that process, and DEA approved the permit within about two

23  weeks.

24      So I think that's the implicit recognition and the explicit

25  representation in the May 22nd letter, which is as long as we

1    are all following the Farm Bill and conducting research to grow

2    and cultivate industrial hemp and these MOUs are in place and

3    they are adhering to their own state law, I think we are in good

4    shape.

5        As far as I know, the seeds should be on their way to the

6    KDA.

7                THE COURT:  Right.

8                MR. SCHECTER:  These farmers are, as you said,

9    extensions.  They are a part of the State Department of

10   Agriculture, which is what the Farm Bill contemplates.

11               THE COURT:  The confusion is in this May 22nd letter,

12   and I know you didn't write it, but it says that only

13   institutions of higher learning, State Departments of

14   Agriculture may grow the hemp.  "It is the position of the DEA

15   that Section 7606 does not provide any authorization for private

16   growers who are not institutions of higher learning" to do so.

17   "The seeds, therefore, may not be distributed by KDA and the

18   institutions ... to private growers who are not institutions of

19   higher education."

20       But I gather that if there's an MOU, then this language is

21   pretty much inoperative because they are considered institutions

22   of higher learning.  Assuming they follow all the other rules,

23   then they are okay.

24               MR. SCHECTER:  Right.  The letter says private growers

25   either who are part of the higher education or a State

1    Department of Agriculture, so that's correct.  That was the

2    distinction that the DEA was trying to make, that you can't have

3    these private growers operating in an autonomous fashion.

4           THE COURT:  Right.  It has to be pursuant to a

5    memorandum of understanding.

6           MR. SCHECTER:  Right, and the state law.  Every state

7    is different.  So obviously in this context, we assume the MOUs

8    for these growers, they were included with the permit

9    application, and the permit application was approved, which we

10   think is consistent with the May 22nd letter and the intent to

11   try and partner with KDA to have these research projects move

12   forward.

13          THE COURT:  So I guess having heard that, my question

14   is what, if anything, could I do?  To me, it seems like there's

15   no dispute.

16          MR. SANDLER:  Your Honor, this is Joe Sandler for the

17   proposed intervenors.  Based on the representations made by

18   counsel for the DEA today, I would say that the motion for a

19   preliminary injunction is now moot.

20       However, there will be continued importation of seeds, some

21   this growing season and certainly next growing season, and it's

22   the position of the proposed intervenors and, I think, without

23   speaking for them, KDA, that going forward -- no import permit

24   should be required because it's clear under this language of the

25   Farm Bill that this agency doesn't have any jurisdiction to

1    condition the importation of the seed pursuant to the Farm Bill

2    provision and in accordance with the applicable state law on

3    applying for an import permit.

4        We would respectfully suggest to the Court that although the

5    preliminary injunction is moot, nothing to be decided today,

6    that if in the normal course a motion for intervention is

7    granted, and we don't know if DEA opposes it, but if that's

8    granted, we would anticipate either moving or potentially

9    joining with KDA and moving for summary judgment, for

10   declaratory judgment and permanent injunctive relief to clarify

11   the situation once and for all.

12       Again, that's not today, Your Honor, no emergency or

13   irreparable harm here at this juncture, but it just would not

14   moot out the whole case and wanted to make that clear to the

15   Court.

16           THE COURT:  Are you saying that your people could

17   directly import the seeds?

18           MR. SANDLER:  No.  The KDA could directly import the

19   seeds without applying for an import permit each time.

20           THE COURT:  Well, we sort of -- I'm not sure you even

21   have standing to raise that issue.  Just a thought.  You know,

22   if that's an issue, then that's an issue for probably at

23   least -- at the very least for KDA to raise.

24       Based on our last conference, my impression was -- and it

25   could be wrong or people's views could change -- that KDA had

1　agreed that they would make the applications.  I don't think

2　they conceded the legal issue, but they agreed for purposes of

3　the ongoing practice that they would make the applications, and

4　the DEA, I think, agreed that they would consider the

5　applications in good faith and basically approve them and allow

6　the use of the seeds pursuant to the MOUs.

7　　I guess this goes to the bigger question in the case, which

8　is whether or not KDA believes there are still -- whether there

9　are any legal disputes to be resolved or whether they are

10　essentially happy with the circumstance that we now have.  If

11　they are happy, you know, maybe the case is sort of dismissed

12　without prejudice because we have essentially resolved it by a

13　mediation slash settlement, an understanding.  But if someone

14　thinks that rulings need to be made, then we can set a schedule

15　and deal with that.

16　　So I guess the KDA can comment first, and then anybody

17　else.

18　　　　MR. MORGAN:  Thank you, Judge.  This is Luke Morgan on

19　behalf of KDA.  I'm the only person on behalf of KDA here for

20　this discussion, Judge.

21　　Your Honor is right that the KDA has not conceded any of its

22　arguments in the motion for declaratory relief.  However, KDA

23　has been working with the DEA toward getting these permits

24　obtained and getting the seeds to the participants in the MOUs

25　as well as the institutions of higher education.  As far as I

1   know, there may have been some disagreements and some issues,

2   but by and large it's all worked out.

3       I think that Mr. Sandler is correct that there may be

4   requests from KDA to DEA in the future for additional pilot

5   projects, but as it is right now, this process is working okay,

6   and we understand what the Court is saying, and I understand

7   what Mr. Plymale has pointed out with the concerns with that

8   letter from May 22nd and the DEA.  What I would like to try to

9   do is work towards some resolution that gets this in writing

10  with the DEA, which I think will ameliorate a lot of concerns by

11  KDA and its partners in these projects.

12          THE COURT:  What about that, Ben or Regina?

13          MR. SCHECTER:  Judge, this is Ben.  Mr. Morgan is

14  correct.  I think there have been a few bumps in the road, but

15  by and large the process is working, and I think it's working

16  more smoothly certainly than it had been about 45 days ago, and

17  it will continue to get better.  And we are working towards

18  helping to clarify or for both sides to get some understanding

19  as to how this process will continue to work going forward and

20  what DEA's concerns are as well as what KDA's concerns are

21  because we both have similar, and yet divergent, interests in

22  all of this.

23      So I think in short order we hope to have some additional

24  clarification for KDA that will be satisfactory to both them as

25  well as our client, the DEA.

1    As far as the intervening plaintiffs are concerned, we do

2  object to their request to intervene and intend to file

3  something, if we get to that point, and certainly as the Court

4  identified, standing issues alone, you know, give us some

5  pause, but just under Rule 24 there are some real problems here

6  because we think KDA, who is the real party in interest, is

7  adequately representing the issues, particularly since the

8  federal law 7606 only authorizes one of two types of entities

9  to even engage in this conduct.  One of those is the KDA,

10  State Department of Agriculture, and the other is the

11  universities.

12    So under Rule 24, we don't even think they can come in,

13  but that is probably an argument for another day.  In the

14  meantime, we are going to continue to work with Luke on this

15  process.

16            THE COURT:  All right.  Well, then it seems to me that

17  all of -- I don't know whether the KDA's original motion is

18  still pending, but did we moot it out?

19            DEPUTY CLERK:  Yes, sir.

20            THE COURT:  I'm certainly willing to give you some

21  time to do that, and then hopefully we would just dismiss the

22  case without prejudice based on whatever understanding you-all

23  reached.

24    It would seem to me -- from my point of view, there are real

25  questions about whether this intervention is proper.  It seems,

1    Dick, that your people are in touch with KDA, have a way of

2    explaining their interest, and could be involved in this

3    reaching of the understanding, and that that's really going to

4    be the key ongoing.

5        To me, it should be something that, based on the discussions

6    we have already had, should be fairly easy to accomplish as long

7    as no one insists that someone is going to give up all their

8    rights to later argue the legal point, but at least have a

9    memorandum of understanding, if you will, between the parties

10   here how it's going to work until someone -- as long as it

11   works, that conduct is going to be deemed to be satisfactory

12   until someone in terms of future conduct might change their

13   mind.

14       If you feel okay with that, then I would at this point deny

15   the motion to intervene.  If you have got a real interest later

16   on, we can reassess that.  But it seems to me sort of

17   unnecessary to go through all the argument at this time.  That

18   would be my thought.

19            MR. PLYMALE:  Joe, would you have anything to add?

20            MR. SANDLER:  I think the main basis for the

21   farmers -- proposed intervening farmers' own interest here was

22   the uncertainty about the May 22nd letter.  Based on DEA's

23   representations today that the farmers are extensions of KDA and

24   KDA can authorize the private farmers to grow under these MOUs

25   and conduct their pilot projects, I think we agree there's

1     probably no independent interest just in the import permit

2     issue.

3              THE COURT:  Okay.  So we are okay for now.  If someone

4     could send us a report of what's going on, let's say, 60 days,

5     some sort of joint -- either KDA or DEA send a report of how the

6     negotiations are going on.  So this is something you can resolve

7     yourself, and you don't need my approval to do it.  How does

8     that sound?

9              MR. SCHECTER:  This is Ben.  That sounds --

10             MR. MORGAN:  I think I'll echo what I think Ben was

11    going to say.  This is Luke Morgan.  That will be fine with

12    KDA.

13             MR. SCHECTER:  And we are already working well

14    together.

15             THE COURT:  Okay.  That sounds fine with the potential

16    intervenors, but we will deny that motion for now.  If

17    circumstances change --

18             MR. SCHECTER:  Judge, the only other request I would

19    have, I think we are going to be able to get this resolved in a

20    much shorter time frame than 60 days.  In theory, we have an

21    answer due to the original dec action and a response due by mid

22    July.  If we could just hold that in abeyance --

23             THE COURT:  Yes.  We will say that's held in abeyance

24    until further order of the Court.

25             MR. SCHECTER:  Thank you, Judge.

1          THE COURT:  Anything else?  All right.  Thank you.

2          MR. SCHECTER:  Thank you.

3      (Proceedings concluded at 12:38 p.m.)

4

5

6               C E R T I F I C A T E

7      I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM

8  THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

9    _s/ Alan W. Wernecke_              June 23, 2014
    Alan W. Wernecke, RMR, CRR
10  Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25